# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**MICHELLE SHAW**                                                                           **PLAINTIFF**

**V.**                            **No. 4:22-CV-00483-JM-ERE**

**KILOLO KIJAKAZI, Acting**
**Commissioner of Social Security**                                                **DEFENDANT**

## RECOMMENDED DISPOSITION

This Recommendation has been sent to United States District Judge James M. Moody, Jr. You may file objections if you disagree with the findings or conclusions set out in the Recommendation. Objections should be specific and include the factual or legal basis for the objection.

Objections must be filed within fourteen days. If you do not object, you risk waiving the right to appeal questions of fact, and Judge Moody can adopt this Recommendation without independently reviewing the record.

### I.     Background

On February 6, 2020, Ms. Shaw protectively filed an application for benefits due to severe chronic knee pain, degenerative disc disease, bulging discs in the back, chronic shoulder pain, social anxiety, and migraine headaches. *Tr. 20, 228.*

Ms. Shaw's claim was denied initially and upon reconsideration. At Ms. Shaw's request, an Administrative Law Judge ("ALJ") held a telephonic hearing on March 22, 2021, where Ms. Shaw appeared with her lawyer, and the ALJ heard

1

testimony from Ms. Shaw and a vocational expert ("VE"). *Tr. 44-87*. The ALJ issued a decision on July 19, 2021, finding that Ms. Shaw was not disabled. *Tr. 17-40*. The Appeals Council denied Ms. Shaw's request for review, making the ALJ's decision the Commissioner's final decision. *Tr. 1-6*.

Ms. Shaw, who was thirty-six years old at the time of the hearing, has a GED, and has past relevant work experience as a fast-food worker, management trainee, telephone solicitor, and cashier checker. *Tr. 53, 82*.

## II. The ALJ's Decision[1]

The ALJ found that Ms. Shaw had not engaged in substantial gainful activity since December 26, 2018, the alleged onset date. *Tr. 22*. The ALJ concluded that Ms. Shaw had the following severe impairments: lumbosacral spondylosis, obesity, osteoarthritis and internal derangement of the right knee (status post-surgery), mild degenerative joint disease of the right ankle/foot, asthma, chronic diastolic congestive heart failure, and hypertension. *Tr. 23*. However, the ALJ found that Ms. Shaw did not have an impairment or combination of impairments meeting or

---

[1] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g) and 416.920(a)-(g).

2

equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Tr. 25*.

According to the ALJ, Ms. Shaw had the residual functional capacity ("RFC") to perform sedentary work, with the following limitations: (1) only occasional climbing, balancing, stooping, kneeling, crouching, and crawling; (2) must avoid concentrated exposure to temperature extremes and hazards, *i.e.*, no working at unprotected heights or around dangerous, unprotected moving machinery, and no driving as part of work. *Tr. 25*.

In response to hypothetical questions incorporating the above limitations, the VE testified that a significant number of potential jobs were available in the national economy that Ms. Shaw could perform, including her past relevant work as a telephone solicitor. *Tr. 34, 82*. Accordingly, the ALJ determined that Ms. Shaw was not disabled.

## III.   Discussion

### A.   Standard of Review

In this appeal, the Court must review the Commissioner's decision for legal error and determine whether the decision is supported by substantial evidence on the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (citing *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). "Substantial evidence" in this context means "enough that a reasonable mind would find [the evidence]

adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citation omitted). In making this determination, the Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The Court will not reverse the Commissioner's decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (citation omitted).

### B. Ms. Shaw's Arguments for Reversal

Ms. Shaw contends that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in: (1) failing to properly develop the record; (2) not performing the psychiatric review technique ("PRT"); and (3) making the RFC finding. *Doc. 10 at 2*. After carefully reviewing the record as a whole, the Court recommends affirming the Commissioner's decision.

### C. Analysis

#### 1. The ALJ Adequately Developed the Record.

Ms. Shaw argues that "[t]he absence of CHF/edema related work restrictions is incongruent with the ALJ's Step Two finding." *Doc. 10 at 8*. This argument is confusing. The ALJ specifically found that "the reconsideration assessment of sedentary work with additional postural and environmental limits is persuasive based on the combined effect of physical pain, knee surgery, habitus, and

congestive heart failure." *Tr. 34.* Despite Ms. Shaw's argument to the contrary, the ALJ, in fact, considered her congestive heart failure, and resulting edema, when analyzing the RFC. Ms. Shaw contends that the ALJ should have considered her need to elevate her legs and frequent bathroom breaks. *Doc. 10 at. 8.* However, Ms. Shaw cites to nothing in the record showing these two things were medically required. Although Ms. Shaw's lawyer asked a hypothetical to the VE that included these limitations, the ALJ, apparently, did not believe the extra limitations were supported by the record, since they were not included in his final RFC.

Ms. Shaw "has the burden to offer the evidence necessary to make a valid decision about her claim." *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). A claimant "bears a heavy burden in showing the record has been inadequately developed. She must show both a failure to develop necessary evidence and unfairness or prejudice from that failure." *Combs v. Astrue*, 243 F. App'x 200, 204 (8th Cir. 2007). "[A]n ALJ does have a duty to develop the record, [but] this duty is not never-ending . . . ." *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011).

Here, the ALJ carefully considered Ms. Shaw's congestive heart failure and had enough information to make an informed decision. Ms. Shaw has not identified any crucial issue that was undeveloped.

5

### 2. The ALJ Did Not Err at Step Two.

Ms. Shaw contends that the ALJ erred at Step Two because his "headache analysis is off-point" and because he found that Ms. Shaw's irritable bowel syndrome ("IBS") was non-severe. *Doc. 10 at 10-11*.

The ALJ found both migraines and IBS non-severe because both were controlled by medication and she did not need to see a specialist for the impairments. *Tr. 23*. "An impairment which can be controlled by treatment or medication is not considered disabling." *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002). For example, Ms. Shaw said that medications had reduced her headaches from fifteen per month to seven or eight.[2] Furthermore, the ALJ "[n]evertheless . . . considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing" the RFC. *Tr. 23*.

Ms. Shaw argues that the ALJ erred in not discussing her "headaches under listing 11.02." *Doc. 10 at 11*. The ALJ was not required to discuss the listing because he determined that the migraines/headaches were non-severe and controlled with medication. Additionally, Ms. Shaw cites no evidence that she meets the listing, so to the extent there is any error, it is harmless. *Schmitt v. Kijakazi*, 27 F.4th 1353, 1358–99 (8th Cir. 2022) ("The burden of proof is on the plaintiff to establish that his or her impairment meets or equals a listing. To meet a

---

[2] Notably, this number is half of the "maybe four migraines a month" described in a September 17, 2020 disability report. *Tr. 284*.

listing, an impairment must meet all of the listing's specified criteria.") (citation and quotations omitted).

Finally, Ms. Shaw argues that the ALJ erred in his discussion of her mental impairments because he relied "upon a single pain-related DDS form . . . ." *Id.* However, the ALJ noted that: (1) "[t]reatment providers consistently noted that the claimant had intact remote and recent memory"; (2) "is able to manage basic household financial matters, follows written and spoken instructions well, finishes what she starts, and has no trouble paying attention"; and (3) "[b]oth counseling and prescribed medications helped the claimant maintain stable moods generally." *Tr. 24-25*. Ms. Shaw's argument that the ALJ relied only on a pain-related form is contradicted by the record.

### 3. The RFC Finding is Supported by the Record as a Whole.

Ms. Shaw asserts that "despite [her] morbid obesity there were no sitting restrictions." *Doc. 10 at 15*. She also contends that "the environmentals assessed in the Step Four RFC do not include any pulmonary-impairment related work restrictions." *Id. at 16*.

The ALJ limited Ms. Shaw to "sedentary exertional level with occasional climbing, balancing, stooping, kneeling, crouching, and crawling to prevent exacerbation of pain and any symptoms associated with congestive heart failure, to address any limitations associated with a higher BMI, and to address the claimant's

reports of shortness of breath." *Tr. 32*. He also restricted Ms. Shaw from "concentrated exposure to temperature extremes due to obesity . . . ." *Tr. 32*.

Ms. Shaw bears the burden of proving her RFC, which represents the most she can do despite the combined effects of her credible limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). "It is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own descriptions of his limitations." *Id.*

Additional treatment records support the ALJ's RFC finding of reduced-sedentary work. Dr. Jonathan Brixey, Ms. Shaw's primary care physician, presented a January 2021 medical source statement finding that Ms. Shaw was unable to work. *Tr. 983*. However, the ALJ properly rejected those findings because the "letter is not so much an opinion of Dr. Brixey's, but rather a recitation of what the claimant had advised, [so] the undersigned concludes that this is not medical opinion evidence." *Tr. 34*. Notably, in January 3, 2019, Ms. Shaw's treating provider restricted her only to light duty after she sustained a foot injury. *Tr. 381*. Other than Dr. Brixby's medical source statement and the January 3, 2019 note, no other treatment provider mentions Ms. Shaw requiring any work restrictions. Additionally, Ms. Shaw's treating physicians repeatedly "advised [her] to maintain normal activities" and "the importance of regular exercise." *Tr. 911*,

*929, 986, 1227, 1238, 1243, 1248, 3140, 1341.* "A lack of functional restrictions on the claimant's activities is inconsistent with a disability claim where, as here, the claimant's treating physicians are recommending increased physical exercise." *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009). Furthermore, Ms. Shaw was not complying with her doctors' recommendations, having repeatedly reported that she does not exercise. *Tr. 1108, 1275*. This failure to "follow treatment recommendations weighed against her credibility, too." *Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017). Ultimately, the ALJ's RFC finding is supported by the record as a whole.

### IV. Conclusion

The ALJ applied proper legal standards in evaluating Ms. Shaw's claims, and substantial evidence supports the decision to deny benefits.

The Court should affirm the decision and enter judgment in favor of Defendant.

IT IS SO ORDERED this 24th day of March 2023.

_____
UNITED STATES MAGISTRATE JUDGE